By the Court,

Co wen, J.
This was an action on the case for flowing the plaintiff’s land, by a dam erected below him on Onondaga creek. He claimed under the state, lot No. 174, and gave in evidence a certificate of purchase by him and H. Seymour, dated July 8th, 1828, and letters patent to them dated January 22d, 1834, describing the lot as surveyed and designated on a map given in evidence at the trial. This map exhibited a dam and pond below, which was in fact the dam and pond in question. The lot containing the defendant’s mill-site had been also purchased of the State by A. M. Walton, January 1st, 1807; but the patent made no express mention of a right to build a dam, or flow above the boundary of the lot so granted. A dam *621 was afterwards built, however, of the height at which it was when the plaintiff purchased, and continued at the same height since. The defendant derived title from Walton. I do not understand the evidence to show that, when Walton took his patent, there was a dam on the premises of sufficient . height to flow the plaintiff’s lot; or that indeed there was then any dam there. One before erected had broken away. I admit that had this been otherwise—-had Walton purchased of the state a dam of sufficient height to flow the plaintiff’s lot, though such dam had stood lower down than the present one, the defendant might, as the successor of Walton, continue the present one at an equal height, and make it tighter than the old one. In the absence of such dam, however, the state did not confer upon Walton or. his successors, the right to flow its land above the boundary of the .granted premises; and the only question is, whether the conveyance to the plaintiff of lot 174 as designated by a map which in another part exhibited the dam and the pond formed by it, shall be construed either to except that part of this lot flowed by the dam, or save the right of flow to the defendant as ah easement,
I should feel no difficulty in saying, contrary to what the judge supposed, that the plaintiff was bound to take notice from the map of the dam and the pond, and the ex tent of the flow as each actually existed, provided such notice were material. It is more material that he was bound to take and did take subject to all which the map could be understood to reserve. But what was that ? Take the strongest language for the defendant which can be collected from the patent. Read it as a grant by the state of lot 174, with the words, “ which lot is in part flowed by the defendant’s dam, built on land heretofore granted by the state to him.” This would be according to the truth. The map was at most mere description. Suppose the patent to have added—“ and on which lot the defendant resides or has erected his dwelling.” That would per se give no right to continue e.ither. He must then be put to show his right *622 independently of any thing in the plaintiff’s patent or on the map. That, we have seen, is nothing more than to use the premises granted to Walton in such a way as not to flow the land of another. The question is simply, whether by selling a farm lying below mine on a creek which happens to furnish a mill-site on the granted premises, I, without one word more, grant the right to drown my farm above. No one would contend for such a consequence. The plaintiff’s lot as laid down on the map and located by other proof, extends to the creek; and he is entitled to go usque filum aquae, discharged of the artificial flow.
The objection taken at an early stage of the cause, that the plaintiff should have produced the map before he was allowed to locate' the premises by oral evidence, and which was after-wards made the basis of a motion to nonsuit, if well founded at the time, cannot now avail the defendant. He waived it by himself afterwards producing the map, and giving evidence which removed all doubt of the true location.
No doubt, the defendant had a right to build a dam on his lot, if not of such a height as to flow the plaintiff’s land; and if the plaintiff recover at all, it must be for carrying it up too high. Hence, it is said the declaration is not adapted to the cause of the injury, which was the excess—not the wrongful erection and continuance of the dam as averred—but "the wrongful raising and continuance of the excess. The latter, however, could not exist without the rightful part. It was, therefore, the building of both parts—the entire dam—and its continuance thus entire, which caused the injury. The proof conforms exactly to the allegations. In any view, however, it is too nice to say, that the averment of an injury caused by one entire thing, is not satisfied by proof that a certain part of the thing was the cause.
New trial denied.